B.S. COSTELLO, INC., Petitioner,

v.

Raymond MEAGHER and Director, Office of Workers' Compensation Programs, United States Department of Labor, Respondents.

Doris KEOUGH, Plaintiff, Appellee,

v.

B.S. COSTELLO, INC., Defendant, Appellant.

Nos. 88–1395, 88–1557.

United States Court of Appeals, First Circuit.

Heard Oct. 5, 1988.

Decided Feb. 17, 1989.

Richard N. Curtin with whom Andre A. Sansoucy and Parker, Coulter, Daley & White, Boston, Mass., were on briefs, for B.S. Costello, Inc.

Christopher N. Hug with whom Latti Associates, Boston, Mass., was on briefs, for Raymond Meagher and Doris Keough.

Marianne Demetral Smith with whom George R. Salem, Sol. of Labor, Randel K. Johnson, Acting Associate Sol. and J. Michael O'Neill, Washington, D.C., Counsel

for Longshore, were on briefs, for Director, Office of Workers' Compensation Programs.

Before CAMPBELL, Chief Judge, BROWN,* Senior Circuit Judge, and COFFIN, Circuit Judge.

LEVIN H. CAMPBELL, Chief Judge.

■ These two cases, here consolidated, raise the question of an employer's own liability for employee disability payments which an insurer cannot meet under the Longshore and Harbor Workers' Compensation Act ("LHWCA"), 33 U.S.C. §§ 901–950 (1982 & Supp. III 1985 & Supp. IV 1986). B.S. Costello, Inc. ("Costello"), an employer subject to the LHWCA, challenges orders that, because of the insolvency of its two workers' compensation insurers during the times at issue here, it must now assume the burden of making periodic disability payments due to an injured former employee and the family of a deceased employee. It was held below that the employer was liable under the LHWCA for the compensation required by the Act, and we affirm.

## I. THE LONGSHORE AND HARBOR WORKERS' COMPENSATION ACT

Before turning to the specific facts of these cases we discuss the relevant statute. The LHWCA provides land-based maritime employees with a workers' compensation scheme similar to that provided by many states for non-maritime workers. *See Longmire v. Sea Drilling Corp.*, 610 F.2d 1342, 1349 (5th Cir.1980). The Act establishes benefits to workers without regard to the employer's fault, but, at the same time, it eliminates common law tort liability and limits the employer's liability to predictable amounts. Congress's purpose in removing workers' benefits claims from common law litigation was to afford expeditious relief to injured workers while distributing their economic losses on to industry and the consuming public. *United States v. Bender Welding & Machine Co.*, 558 F.2d 761, 763–64 (5th Cir.1977).

---

* Of the Fifth Circuit, sitting by designation.

While structured so that an employer's liability typically will be underwritten by an insurance carrier selected by the employer, the LHWCA provides unequivocally that "every employer shall be liable for" payment of the benefits owed to his employees. Thus section 904(a) provides,

(a) Every employer shall be liable for and shall secure the payment to his employees of the compensation payable under [certain sections] of this title.

33 U.S.C. § 904(a) (Supp. IV 1986). Except as an employer fails to "secure" payment of compensation as section 904 requires, the LHWCA limits employer liability for death or injury to the compensation payable under the Act's terms.[1] An employer may "secure" payment to his employees by either insuring payment with an approved workers' compensation insurer, 33 U.S.C. § 932(a) (Supp. IV 1986), or by satisfying the Secretary of Labor of the employer's own ability to pay any compensation which may potentially be due. 33 U.S.C. § 932(b) (Supp. IV 1986). The requirement to "secure" compensation ensures that employers who fail to qualify as self-insurers will enlist the resources of an insurance carrier, so as to make augmented provision for the payment of any benefits which may be the employer's responsibility. H.R.Rep. No. 570, 98th Cong., 2d Sess. 19, *reprinted in* 1984 U.S.Code Cong. & Admin.News 2734, 2752. Since employees' claims will thus commonly be handled by an insurance carrier, the LHWCA facilitates claim administration by allowing the Secretary of Labor to substitute the carrier for the employer for purposes of administrative proceedings and orders.[2] The legislative history indicates, however, that notwithstanding the important role carved out for insurance carriers, Congress had no intention of releasing employers from the basic liability clearly stated in section 904, *supra. Id.* Rather, the carriers were to be an additional but not the sole source of payment for injured workers and their families. *See infra.*

The LHWCA also established a Special Fund, administered by the Secretary of Labor. The fund is maintained by assessments on employers and insurers who participate in the LHWCA's compensation scheme, amounts collected as fines and penalties under the Act, and death benefit payments by employers where the employee had no survivors. 33 U.S.C. § 944(c) (1982 & Supp. IV 1986). The fund provides certain benefits to employees that otherwise are unavailable from employers. Primarily, the fund pays compensation for "second injuries," where it would be unfair to require the employer to absorb the entire cost of a disability which ensued from a previous injury combined with a work-re-

1. 33 U.S.C. § 905(a) (Supp. IV 1986) provides:
   (a) **Employer liability; failure of employer to secure payment of compensation**
   The liability of an employer prescribed in section 904 of this title shall be exclusive and in place of all other liability of such employer to the employee ... and anyone otherwise entitled to recover damages from such employer at law or in admiralty on account of such injury or death, except that if an employer fails to secure payment of compensation as required by this chapter, an injured employee, or his legal representative in case death results from the injury, may elect to claim compensation under the chapter or to maintain an action at law or in admiralty for damages on account of such injury or death....

2. 33 U.S.C. § 935 (Supp. IV 1986) provides:
   **Substitution of carrier for employer**
   In any case where the employer is not a self-insurer, in order that the liability for compensation imposed by this chapter may be most effectively discharged by the employer, and in order that the administration of this chapter in respect of such liability may be facilitated, the Secretary shall by regulation provide for the discharge, by the carrier for such employer, of such obligations and duties of the employer in respect of such liability, imposed by this chapter upon the employer, as it considers proper in order to effectuate the provisions of this chapter. For such purposes (1) notice to or knowledge of any employer of the occurrence of the injury shall be notice or knowledge of the carrier, (2) jurisdiction of the employer by a deputy commissioner, the Board, or the Secretary, or any court under this chapter shall be jurisdiction of the carrier, and (3) any requirement by a deputy commissioner, the Board, or the Secretary, or any court under any compensation order, finding, or decision shall be binding upon the carrier in the same manner and to the same extent as upon the employer. *Id.* The regulation issued pursuant to section 935 makes essentially the same provisions. *See* 20 C.F.R. § 703.115 (1988).

lated injury. *See* 33 U.S.C. § 908(f) (Supp. IV 1986). The Secretary also uses the Special Fund to provide workers with information and legal assistance regarding their rights under the Act. 33 U.S.C. § 939(c)(1) (1982 & Supp. III 1985); *id.* at § 944 (Supp. IV 1986).

The LHWCA also permits the Secretary, in her discretion, to use the Special Fund if an employer's insolvency or other circumstances preclude payment of compensation due an employee. 33 U.S.C. § 918 (1982 & Supp. IV 1986). This relief is available only to employees who first have obtained a federal district court judgment compelling an employer to comply with a compensation order. Further, the LHWCA authorizes the Secretary to award such payment only if money remains after she has paid all the fund's current commitments. *Id.* at § 918(b). Even if the Secretary opts to grant an employee relief, the employer remains liable to the Special Fund for the amount paid to the employee. *Id.*

## II. THE CASES BELOW

The employer in these cases, B.S. Costello, Inc., provides administrative and supervisory stevedoring services to the Massachusetts Port Authority at the Moran Terminal in Charlestown, Massachusetts. Although Costello is a small business concern, having approximately seven employees, the nature of Costello's business subjects it to the LHWCA's provisions. At all times relevant, Costello provided workers' compensation insurance for its employees.

Claimant in the first of these two cases is Doris Keough, the widow of Leonard Keough, a Costello employee who died as the result of an injury sustained while in Costello's employ. At the time of Keough's death, Midland Insurance Company ("Midland") provided insurance for Costello employees. In 1981, an administrative

law judge ("ALJ") ordered Midland to provide benefits to Keough in accordance with the LHWCA. Midland made monthly payments until 1986, when a New York court ordered it into liquidation. Keough brought an action against Costello to enforce the ALJ's order in the United States District Court for the District of Massachusetts.[3] The district court granted summary judgment to Keough. Costello appeals pursuant to 28 U.S.C. § 1291 (1982).

The second case involves a petition to review a decision of the Benefits Review Board ("BRB"), which heard Costello's appeal from the order of an administrative law judge. Raymond Meagher suffered an injury on March 5, 1984, while working for Costello. Costello's insurance carrier at that time, Transit Casualty Company ("Transit"), voluntarily paid disability benefits to Meagher until November 1985. Soon thereafter, a Missouri court adjudged Transit insolvent. Upon Transit's insolvency, an ALJ ordered Costello to provide disability compensation to Meagher. Costello appealed from the ALJ's order to the BRB, which affirmed the ALJ's decision in all respects. In this court, Costello petitions for review of the BRB's affirmance of the ALJ's order.

## III. COSTELLO'S LIABILITY UNDER THE LHWCA

### A. *Employers' Liability under the Act*

In spite of having insured against its employees' compensation claims as the LHWCA requires, Costello now finds itself faced with paying those claims from its own pockets because of its insurers' insolvency. We do not minimize Costello's predicament, especially in light of its small size and limited resources. The seeming injustice has inspired Costello to urge upon us a "non-literal" interpretation of the LHWCA's provisions,[4] namely, that an em-

---

**3.** Once a compensation order becomes final, a claimant may bring an action to enforce the order in district court. 33 U.S.C. § 921(d) (1982). Orders do not become final until 30 days after they are instituted. 33 U.S.C. § 921(a) (1982). Employers may appeal from compensation orders to the Benefits Review Board ("BRB"), and from decisions of the BRB

to the court of appeals for the circuit in which the injury occurred. 33 U.S.C. § 921(b), (c) (1982 & Supp. IV 1986).

**4.** The key provision, as earlier noted, is 33 U.S.C. § 904, providing in pertinent part, "Every employer shall be liable for and shall secure the payment to his employees of the compensation

ployer fully discharges its statutory liability once it has secured insurance. Costello asks us to view the statute as meaning to provide for employees by distributing the risk of injuries across the land-based maritime industry, not by bankrupting individual employers. Costello urges that a comprehensive insurance scheme is the best method for spreading costs over the industry, because employers can predict insurance costs and recoup them from customers. Insurance companies, not employers, have the resources to anticipate the actual costs of injuries, and can adjust their rates accordingly. The LHWCA, Costello argues, contemplates a network of insurance companies liable for injuries. In Costello's vision for the LHWCA, employers who choose to take advantage of the network would be liable only for providing insurance.

Costello finds support for its position in the LHWCA provisions which refer, often indirectly, to insurance. Section 904, for example, requires employers to secure insurance. Section 905 limits employer liability only for those employers who satisfy this obligation to secure insurance. Section 935 substitutes insurance companies for employers where an insurance policy covers an employee's claim.

Whatever may be the strength of Costello's position as a policy matter, we must conclude that it is not supported in the legislation that Congress has enacted. Rather than prescribing a scheme solely of insurer liability, the statute plainly continues to hold employers responsible for all payments due employees. Section 904 contains a *dual* mandate—"an employer shall be liable for *and* shall secure the payment to his employees...." 33 U.S.C. § 904(a) (emphasis supplied). A congressional committee report on recent amendments to the Act expressly states that the requirement to secure insurance does *not* reduce employers' obligations under the Act. *See* H.R.Rep. No. 570, 98th Cong., 2d Sess. 19,

*reprinted in* 1984 U.S.Code Cong. & Admin.News 2734, 2752. Section 905 simply substitutes the statutory liability imposed by section 904 for any existing common law liability. *See* 33 U.S.C. § 905. Nothing in section 935 indicates that substitution of an insurance carrier *for administrative purposes* absolves the employer's liability. To the contrary, the section provides that administrative actions "shall be binding upon the carrier in the same manner and to the same extent as upon the employer," indicating that carrier liability is imposed *in addition to*, not in place of, employer liability. *See* 33 U.S.C. § 935.

Neither is the statute's plain language inconsistent with Congress's asserted legislative purpose. The Act confers a significant benefit upon employers in that they are relieved of the less predictable and perhaps greater expense of conventional tort claims, for which an employer, just as here, would be financially responsible in the event his insurance carrier collapsed. To absolve Costello would leave Keough and Meagher without recourse for the money owed them. As between injured employees and their employer, it is reasonable to believe that Congress would have wanted the employees to prevail. That, in any case, is what the plain terms of the LHWCA provide for. Accordingly, we hold that where, as here, an employer's insurance carrier becomes insolvent, the employer remains liable to employees for the compensation due under the LHWCA.

### B. *The Special Fund*

Costello's second line of attack is to charge that its insurers' insolvency is a "circumstance precluding payment" which entitles Keough and Meagher to compensation from the Secretary of Labor's Special Fund. Costello asks us to order the Secretary to pay Costello's employees from the Special Fund. Costello's approach, as a policy matter, is not without appeal. A

---

payable under [the Act]." The employer's duty to "secure the payment" is in addition to, not an alternative to, its liability for the payment to its employees. While Congress clearly wanted the employees to have the benefit of "secured" pay-

ments in addition, simply, to claims against the employer, there is no indication that it meant to substitute the security for the underlying employer's liability.

legislative scheme requiring all participating insurers in the nation to contribute to a fund that would secure against the default of one or more of their number might be a good addition to the present statute. Be that as it may, the LHWCA simply is not structured in that way. Payment from the Special Fund lies in the Secretary's discretion, and we have no power to order the Secretary to take discretionary action. Further, the LHWCA clearly anticipates that the first source of payment must be the employer. Even if the Secretary were to pay Keough and Meagher from the Special Fund, Costello would remain liable to the government for the amounts paid. *See* 33 U.S.C. § 918(b).[5] Lacking any statutory basis for doing so, we therefore decline to order payment from the Special Fund.

## C. *Other Arguments*

In the Meagher case, Costello appeals on two additional grounds. First, Costello appeals from the ruling that it cannot escape liability under a portion of section 904 that holds a general contractor liable for compensation where its subcontractor failed to secure insurance.[6] Again, Costello asks us to give the statute a meaning contrary to its plain language. Accepting arguendo, for the moment, that Costello did *not* secure insurance, section 904(a) would not relieve Costello from liability. Rather, the Act imposes *additional* liability on general contractors in certain limited circumstances, consistent with its purpose of ensuring compensation to employees. Further, there is no question that Costello "secured" payment by entering into the insurance contract with Transit. The LHWCA states that "every employer shall secure the payment of compensation ... by insuring and

keeping insured the payment of such compensation with any [approved insurance company]." 33 U.S.C. § 932. The fact of Transit's insolvency does not alter the fact that Costello initially secured insurance as the Act requires. Accordingly, we affirm the BRB's ruling that section 904(a) does not absolve Costello's liability.

Second, Costello appeals from the BRB's holding that Costello, rather than the Port Authority, assumed the status of Meagher's employer. The ALJ found that Costello was an independent contractor to the Port Authority, and accordingly, ruled that Costello was Meagher's employer at the time of Meagher's injury. The BRB must accept administrative findings of fact unless they are unsupported by substantial evidence in the record considered as a whole. 33 U.S.C. § 921(b)(3) (1982). When a decision of the BRB is before this court, our review is limited to errors of law, including the question of whether the Board adhered to the substantial evidence standard in its review of factual findings. *Cornell University v. Velez*, 856 F.2d 402, 404 (1st Cir.1988); *Air America, Inc. v. Director, Office of Workers' Compensation Programs*, 597 F.2d 773, 778 (1st Cir.1979); *Bath Iron Works Corp. v. White*, 584 F.2d 569, 573–74 (1st Cir.1978) (citing *O'Keeffe v. Smith, Hinchman & Grylls Associates, Inc.*, 380 U.S. 359, 363, 85 S.Ct. 1012, 1015, 13 L.Ed.2d 895 (1965); *O'Leary v. Brown–Pacific–Maxon, Inc.*, 340 U.S. 504, 508, 71 S.Ct. 470, 472, 95 L.Ed. 483 (1951); 33 U.S.C. § 921(b)(3)). In this case substantial evidence in the record as a whole supports the ALJ's finding that Costello was Meagher's statutory employer. Accordingly, we

---

**5.** Even if we could grant relief to Keough from the Special Fund, an additional factor militates against Costello's suggestion that the Secretary could compensate Meagher. The Secretary is authorized only to pay compensation if the employer is unable to satisfy a district court judgment. Because this case is still on direct appeal from the ALJ's order, Meagher presently has no district court judgment to enforce. Thus, even if Costello *is* unable to compensate Meagher, the Secretary does not currently possess the discretion to pay the compensation due Meagher.

**6.** The relevant portion of section 904(a) provides:

In the case of any employer who is a subcontractor, only if such subcontractor fails to secure the payment of compensation shall the contractor be liable for and be required to secure the payment of compensation. A subcontractor shall not be deemed to have failed to secure the payment of compensation if the contractor has provided insurance for such compensation for the benefit of the subcontractor.

*Id.*

affirm the BRB's refusal to set aside the ALJ's finding.

## IV. CONCLUSION

We are not unsympathetic to Costello's plight. We recognize that it might well have been possible to formulate a workers' compensation scheme containing a more satisfactory solution to the problem of insurer insolvencies than the one we are obliged to enforce here. If such a scheme is forthcoming, however, it must come from Congress, not the courts. We are obliged to follow the present statute's plain language. Because the LHWCA unquestionably imposes liability for employees' injuries on employers, regardless of the availability of insurance, we affirm the district court's judgment in *Keough v. B.S. Costello, Inc.*, and the BRB's order in *Meagher v. B.S. Costello, Inc. and Director, Office of Workers' Compensation Programs.*

SO ORDERED.

JOHN R. BROWN, Senior Circuit Judge, dissenting.

I dissent since this imposes a fiscally damning and destructive burden on a law abiding employer who has in good faith complied scrupulously with the congressional scheme to either (i) qualify as a self-insurer, or (ii) procure and maintain insurance from a qualified and approved insurance carrier.

As the Court correctly points out, the Act prescribes a precise scheme. First, there is the statutory obligation to provide for benefits and medical care that is imposed on the employer. Next, it prescribes that this statutory obligation can be satisfied in one of two ways: (i) qualify as a self-insurer, or (ii) procure and maintain insurance from agency approved carriers covering all liabilities for benefits and medical care imposed by the Act with such insurance carrier having all of the duties, responsibilities and obligations of the employer.

By this means, Congress legislatively determined that an employer, by following either of these two routes, satisfies his obligations under the Act. In the long judicial struggle [1] to afford at long last some character of workers' compensation to harbor workers who could not constitutionally receive similar benefits afforded by local worker compensation schemes, it is presumptuous to hold that Congress was not only affording a constitutionally effective scheme, it was at the same time commanding that these new liabilities are mandatory on employers notwithstanding full faithful compliance with the Act. I cannot believe that Congress meant to impose this awful burden on the employer. Certainly not when, considering the extremely heavy ceilings imposed by the 1972 and 1984 amendments, this awful burden will drive an employer to bankruptcy on the failure of his approved insurer.

Congress could also not have intended that employers should be allowed to shirk obligations for injuries to workers under the guise of the LHWCA. Congress did want to devise a system whereby these types of claims could be settled quickly, efficiently, and which bypassed the normal mechanism of a suit in admiralty or an action-at-law.

What the Court does is to punish Costello for doing exactly what the statute requires. What the Court does not consider is that employers that fall under the statute can now no longer safely plan for their companies' futures. Past liabilities that were presumed to have been adequately provided for may return to haunt a company many years in the future.

Moreover, if Congress had intended that an employer who has obtained and maintained insurance should nevertheless remain liable, then logically that employer constitutes a self-insuring organization. Consequently, such employer would have to show the Secretary of Labor that it possessed adequate resources to cover its

---

**1.** This is wrapped up in the judicial travail culminating in *Southern Pacific Co. v. Jensen,* 244 U.S. 205, 37 S.Ct. 524, 61 L.Ed. 1086 (1917).

liabilities. There is no evidence, historical or otherwise, that any employer who is fully insured under the Act has ever been required to show the Secretary of Labor that in addition to procuring insurance from an approved insurer, it possessed sufficient resources to fulfill LHWCA obligations if the insurer failed or went out of business.

Additionally, while Costello, the employer, is fiscally doomed by the Court's opinion, it does not follow that Keough and Meagher, the injured workers, would be if the Court were to hold for Costello. The Court, in my mind, does not address adequately the purpose of the special fund. Reference to the legislative history of the Act, especially that of § 6, reveals that the fund

> may be used to pay compensation under any award made under the act in cases where the employer has defaulted in the payment of compensation due to insolvency or any other circumstances.

Longshoremen and Harbor Workers—Increased Benefits for Disability Injuries, H.R.Rep. No. 2067, 84th Cong. 2nd Sess. 2, *reprinted in* 1956 U.S.Code Cong. & Admin.News 3542, 3546.

While this quotation refers specifically to the employer only, it nonetheless indicates congressional purpose that the fund may indeed be available to pay awards in cases of insolvency and similar circumstances which would naturally include insolvency or failure of the insurer. Thus, although the paying of awards otherwise uncollectible is not a primary function of the fund, the fund is not isolated from these claims.[2] Moreover,

> [S]ince from time to time a case arises in which the employee ... has been unable to collect compensation from the employer or the employer's insurer, principally in insolvency situations, the fund can fill a great need in these occasional cases

without prejudice to the other purposes for which the fund was established. *Id.*

The Court feels that the fund can only be reached after both the insurer and the employer have become insolvent. This is both bad law and, worse, bad economics. All that will happen is that a legitimate business enterprise—which has meticulously fulfilled its exacting statutory obligations in good faith—will be driven into bankruptcy leaving the question whether the fund will then assume the obligation of compensation payments. The process need not be so destructive to industry and to the employees who will lose their jobs when the employer (or, more likely, his trustee) shuts down.

I, therefore, dissent.

---

**2.** Even the majority would ultimately find the special fund liable for a claim which could not be otherwise collected from an employer or insurance company. *See,* 867 F.2d 722, 725 (1st Cir.1989). My disagreement lies not with the fund's ultimate liability, but with when that liability commences.