In the Matter of the Claim for COMPENSATION UNDER THE LONGSHORE AND HARBOR WORKERS' COMPENSATION ACT.

Neil ABBOTT, Jr., Plaintiff–Appellee,

v.

LOUISIANA INSURANCE GUARANTY ASSOCIATION, Defendant–Appellant.

No. 89–3021.

United States Court of Appeals, Fifth Circuit.

Dec. 6, 1989.

Rehearing Denied Jan. 3, 1990.

Collins C. Rossi, B. Ralph Bailey, Bailey & Rossi, Metairie, La., for defendant-appellant.

David B. Allen, Houma, La., for plaintiff-appellee.

Before CLARK, Chief Judge, GEE and SMITH, Circuit Judges.

CLARK, Chief Judge:

## I.

The Louisiana Insurance Guaranty Association (LIGA) appeals from a district court judgment enforcing a Supplemental Order of Default against LIGA for the payment of worker's compensation under the Longshore and Harbor Workers' Compensation Act ("LHWCA" or "Act"). 33 U.S.C. §§ 901–950. LIGA contends that the district court should have declined to enforce the Supplemental Order of Default (Supplemental Order) because LIGA was denied due process in the issuance of the original Compensation Order on which the Supplemental Order is based. Because LIGA's due process claims will properly be considered by the Benefits Review Board of the United States Department of Labor (BRB), we affirm.

## II.

Niel Abbott, Jr. (Abbott) was injured during his employment at Universal Iron Works, Inc. (Universal). Abbott received worker's compensation payments from Universal's insurer, Western Preferred Casualty Company (Western) until that company became insolvent. Compensation then was paid by Universal itself, until it too became insolvent. The Western policy contained a "cut-through" endorsement requiring Early American Insurance Company (Early American) to pay Western's unpaid claims. However, Early American also became insolvent. Abbott received no further payments.

Abbott filed an administrative claim under the LHWCA against Universal and others for the unpaid benefits. Abbott later added LIGA as a party to the proceedings. LIGA was created by Louisiana law to pay the claims of insolvent Louisiana insurers. Although Western is not admitted as an insurer in Louisiana and therefore does not come under LIGA's coverage, Early American is a Louisiana insurer. After conducting a hearing on Abbott's eligibility for benefits, the Administrative Law Judge (ALJ) entered a Compensation Order requiring LIGA to pay the benefits based on the Early American "cut-through" endorsement.

LIGA refused to pay and appealed to the BRB. LIGA insisted that it had been deprived of due process because it received inadequate notice of the administrative hearing and was not allowed to present its arguments for non-liability. LIGA also petitioned the BRB for a stay of the Compensation Order pending final resolution of its appeal. The BRB denied the stay because LIGA was unable to show that it would suffer irreparable harm. *See* 33 U.S.C. § 921(b)(3).

Abbott subsequently applied for and received from the Deputy Commissioner of the United States Department of Labor (Deputy Commissioner) a Supplemental Order of Default against LIGA, based on the unpaid Compensation Order. Abbott then petitioned the district court under section 21(d) of the LHWCA to enforce LIGA's payment of the benefits. 33 U.S.C. § 921(d).

The district court recognized that enforcement was inappropriate under section 21(d), because the Compensation Order was still on appeal to the BRB, and treated Abbott's petition as a petition for enforcement of the Supplemental Order under LHWCA section 18(a). 33 U.S.C. § 918(a). The court concluded that the Supplemental Order had been issued "in accordance with law" as required by section 18(a) and entered judgment against LIGA. The court reasoned that its function in section 18(a) enforcement proceedings was limited to determining whether the Supplemental Order itself had been entered "in accordance with law" and that LIGA's challenges to the

underlying Compensation Order were properly being considered by the BRB.

LIGA now appeals from the district court's order, contending that LHWCA section 18(a) and due process required the district court to review the procedural correctness of the underlying Compensation Order before enforcing the Supplemental Order. LIGA asserts that the district court should have declined to enforce the Supplemental Order because LIGA was denied due process in the issuance of the underlying Compensation Order. Because LIGA's challenge to the Compensation Order is properly before the BRB, we affirm.

### III.

LIGA's arguments in this appeal are based partly on its asserted construction of LHWCA section 18(a) and partly on due process grounds. We will first consider LIGA's statutory contentions and then turn to LIGA's due process claims.

### A. LHWCA Section 18(a).

■ LIGA's first contention is that the district court's scope of review in LHWCA section 18(a) enforcement proceedings includes the procedural sufficiency of the original Compensation Order. LIGA asserts that the district court could not determine whether the Supplemental Order was "in accordance with law" as required by section 18(a), 33 U.S.C. § 918(a), unless the district court also reviewed the underlying Compensation Order for procedural errors. LIGA maintains that the Supplemental Order could not be "in accordance with law" if the underlying Compensation Order was issued in violation of LIGA's right to due process. We disagree.

Before the Deputy Commissioner can enter a supplemental order of default against an employer or insurance carrier under section 18(a), he must follow certain procedures. The Deputy Commissioner must investigate the claimant's application, provide notice of the claim to interested parties, and give the parties an opportunity for a hearing in the manner specified in section 19 of the Act. 33 U.S.C. § 918(a); see id. § 919. If there is no dispute about wheth-

er benefits are due under a compensation order or whether there has been a default in payments, the Deputy Commissioner must calculate the amount of the default and enter a supplemental order. Id. § 918(a). The Deputy Commissioner is required to file the supplemental order in the same manner as a compensation order and must notify the responsible parties. Id. §§ 918(a), 919(e). At the claimant's request, the district court can then enforce the supplemental order of default "if such supplementary order is in accordance with law." Id. § 918(a). We conclude that a supplemental order of default is "in accordance with law" as required by section 18(a) if the Deputy Commissioner has correctly followed the procedures outlined above.

Section 18(a) was intended to provide a "quick and inexpensive mechanism for the prompt enforcement of unpaid compensation awards, a theme central to the spirit, intent, and purposes of the LHWCA." *Tidelands Marine Serv. v. Patterson*, 719 F.2d 126, 129 (5th Cir.1983). For this reason, we have held that supplemental orders of default are final when entered and are not appealable to the BRB. *Id.* Allowing review of underlying compensation orders in proceedings to enforce supplemental orders of default could cause additional delay and expense and frustrate Congress' intent to get compensation into the injured workers' hands as quickly as possible. *See Henry v. Gentry Plumbing & Heating Co.*, 704 F.2d 863, 865 (5th Cir.1983).

The legislative history of the statutes creating the BRB also supports this construction of section 18(a). Prior to the 1972 amendments to the Act, compensation orders were directly reviewable by the district court. *See Alford v. American Bridge Div., U.S. Steel Corp.*, 642 F.2d 807, 809 (5th Cir.), *modified*, 655 F.2d 86, 668 F.2d 791 (5th Cir.1981), *cert. denied*, 455 U.S. 927, 102 S.Ct. 1292, 71 L.Ed.2d 472 (1982). However, in 1972 Congress created the BRB to hear all direct appeals of compensation orders. This replaced the district court's exercise of that function. *See* H.R. Rep. No. 1441, 92nd Cong., 2d Sess., *reprinted in* 1972 U.S.Code Cong. & Admin.

News 4698, 4709. It would therefore be contrary to Congress' intent for the district courts to review the lawfulness of compensation orders in section 18(a) enforcement proceedings.

Congress has provided a comprehensive system of review for compensation orders. An aggrieved party may appeal a compensation order to the BRB and may petition the BRB for a stay of payments. 33 U.S.C. § 921(b)(3). The BRB also has authority to remand a case at any time during its review "for further appropriate action," such as additional findings. *Id.* § 921(b)(4); *see, e.g., Aerojet–General Shipyards, Inc. v. Smith,* 647 F.2d 518, 521 (5th Cir.1981). The BRB's final orders are then appealable to the United States Courts of Appeals. *Id.* § 921(c). The BRB and Courts of Appeals may review "any substantial question of law or fact," including procedural errors such as those asserted by LIGA. *Id.* § 921(b)(3); *see, e.g., Aerojet–General Shipyards,* 647 F.2d at 525 (alleged denial of due process because of inadequate notice and opportunity to defend). Collateral review of compensation orders in section 18(a) enforcement proceedings is therefore unnecessary and would be contrary to the "spirit, intent, and purposes of the LHWCA." *Tidelands,* 719 F.2d at 129. We conclude that the district court's scope of review in section 18(a) enforcement proceedings is limited to the lawfulness of the supplemental orders of default and does not include the procedural or substantive correctness of the underlying compensation orders.

In this case, once the BRB denied LIGA's motion for a stay of the ALJ's Compensation Order, the Deputy Commissioner had authority to issue the Supplemental Order of Default. *See* 33 U.S.C. §§ 918(a), 921(b)(3). LIGA did not argue in the district court that the Deputy Commissioner failed to provide notice of Abbott's application for a supplemental order or an opportunity for a hearing. Nor did LIGA assert that the Deputy Commissioner incorrectly calculated the default or failed to file the Supplemental Order and notify LIGA. While LIGA's counsel suggested at oral argument before this Court that the Deputy Commissioner may not have given LIGA notice and a hearing before entering the Supplemental Order, LIGA has not offered any proof that such omission substantially prejudiced its rights. *See Ka Fung Chan v. INS,* 634 F.2d 248, 258 (5th Cir.1981) ("proof of denial of due process in an administrative proceeding requires a showing of substantial prejudice"). We conclude that the Supplemental Order was "in accordance with law" within the meaning of LHWCA section 18(a).

LIGA also argues that the Supplemental Order was not "in accordance with law" because it was not based on "an appealable prior compensation order that resolves the substantive rights of the parties." *Providence Washington Ins. Co. v. Director, Office of Worker's Comp. Programs,* 765 F.2d 1381, 1386 (9th Cir.1985). LIGA asserts that the Compensation Order did not resolve its substantive rights because the ALJ assured LIGA at the administrative hearing that he was only going to consider Abbott's entitlement to benefits and that LIGA's liability would be the subject of an additional hearing.

We reject this contention. Despite what the ALJ may have said at the administrative hearing, the Compensation Order unambiguously states that LIGA is liable for the benefits. Thus, the Deputy Commissioner correctly concluded that "the payment of compensation [was] due under [an] award of compensation," and properly issued the Supplemental Order. 33 U.S.C. § 918(a). LIGA does not have the right to have its challenge to the lawfulness of the Compensation Order decided by the Deputy Commissioner. LIGA must address that challenge in its proceedings before the BRB.

*B. Due Process.*

LIGA next contends that due process requires that LIGA be afforded an initial, pre-enforcement check against compensation orders issued in violation of established procedural safeguards. LIGA asserts that the initial check should be provided by the district court in section 18(a) enforcement proceedings because the district court is the appropriate forum for the

vindication of one's constitutional rights. We disagree.

"The fundamental requirement of due process is the opportunity to be heard 'at a meaningful time and in a meaningful manner.'" *Mathews v. Eldridge*, 424 U.S. 319, 333, 96 S.Ct. 893, 902, 47 L.Ed.2d 18 (1976) (quoting *Armstrong v. Manzo*, 380 U.S. 545, 552, 85 S.Ct. 1187, 1191, 14 L.Ed.2d 62 (1965)). This requirement generally means that a party must have the opportunity for a hearing before the government initially interferes with the party's protected property interest. *See Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 542, 105 S.Ct. 1487, 1493, 84 L.Ed.2d 494 (1985). The LHWCA provides for a full pre-deprivation hearing before an ALJ in cases where an injured worker's entitlement to benefits or an employer's or insurance carrier's liability is disputed. *See* 33 U.S.C. §§ 919(c) & (d).

However, when the government's interference with a property interest occurs not because adequate procedures are lacking in a statute or regulation, but because of the failure of the government's representatives to follow them, the demands of due process are satisfied if there is "some meaningful opportunity subsequent to the initial taking for a determination of rights and liabilities." *Parratt v. Taylor*, 451 U.S. 527, 541, 101 S.Ct. 1908, 1916, 68 L.Ed.2d 420 (1981), *overruled on other grounds, Daniels v. Williams*, 474 U.S. 327, 106 S.Ct. 662, 88 L.Ed.2d 662 (1986) (prison officials' negligent interference with protected interests does not constitute a "deprivation" for purposes of due process); *see also Ingraham v. Wright*, 430 U.S. 651, 97 S.Ct. 1401, 51 L.Ed.2d 711 (1977); *Delahoussaye v. Seale*, 788 F.2d 1091, 1094 (5th Cir.1986). If so, the government's post-deprivation procedures "constitute all the process due." *Delahoussaye*, 788 F.2d at 1094.

■ Such is the situation in this case. LIGA does not argue that the notice and hearing procedures established by the LHWCA are inadequate. Rather, LIGA argues that the ALJ's failure to ＿follow established procedures before entering the Compensation Order denied LIGA its right to due process. Therefore, we must determine whether the LHWCA provides "some

meaningful opportunity" subsequent to the ALJ's decision for a determination of LIGA's rights and liabilities. We conclude that it does.

Congress has provided that challenges to the procedural or substantive correctness of compensation orders are to be tested preliminarily by appeal to the BRB and the motion for a stay. 33 U.S.C. § 921(b)(3). The BRB is authorized to grant a stay of a compensation order if the responsible party would otherwise suffer "irreparable injury." *Id.* The BRB has authority to review any substantial question of law or fact concerning a compensation order, and the BRB's final orders are appealable to the Courts of Appeals. *Id.* §§ 921(b)(3), 921(c).

This comprehensive scheme provides a meaningful opportunity for post-deprivation review. All of LIGA's due process claims can be asserted before the BRB and subsequently in this Court. All of the remedies sought by LIGA can be urged before the BRB and here. The BRB's power to stay compensation awards to prevent irreparable injury assures that post-deprivation review will be meaningful, because irreparable injury occurs only when post-deprivation remedies will be inadequate to make the aggrieved party whole. *See Rivere v. Offshore Painting Contractors*, 872 F.2d 1187, 1191 (5th Cir.1989); *cf. Interox v. PPG Industries, Inc.*, 736 F.2d 194, 202 (5th Cir.1984). Indeed, the primary justification for granting a stay is to preserve the decisionmaker's ability to render a meaningful decision. *Cf. Treasure Salvors, Inc. v. The Unidentified Wrecked & Abandoned Sailing Vessel*, 640 F.2d 560, 568 (5th Cir.1981). Therefore, the BRB, in denying LIGA's motion for a stay, has determined that LIGA will have the opportunity for meaningful review.

■ Furthermore, the opportunity to petition for a stay provides a prompt, pre-enforcement check against mistaken ALJ decisions. While the BRB can only grant a stay to avoid irreparable injury, stay proceedings provide at least some opportunity to be heard before a compensation order or supplemental order of default is enforced. The fact that the BRB does not always conduct hearings on motions for stay does not change the result. Due process does

not always require the opportunity for an oral hearing. *See, e.g., Mathews*, 424 U.S. at 345, 96 S.Ct. at 907. We conclude that the LHWCA provides LIGA the opportunity for meaningful review of the ALJ's alleged procedural errors.

■ LIGA nevertheless contends that district court review of compensation orders in section 18(a) enforcement proceedings would provide a more effective check against procedurally incorrect ALJ decisions. Assuming, arguendo, that this assertion may be true, the appropriate inquiry is not whether district court review would be more effective, but whether due process requires such review. We conclude that it does not.

To determine whether LIGA has a constitutional right to additional pre-enforcement review of the Compensation Order, we must weigh the competing interests involved. *See Mathews*, 424 U.S. at 335, 96 S.Ct. at 903. The private interest at stake is LIGA's payment of worker's compensation pending BRB review. While LIGA's interest in the retention of its funds pending review is not as compelling as an individual's interest in continued employment, *see Loudermill*, 470 U.S. at 543, 105 S.Ct. at 1494, or the receipt of social security disability benefits, *see Mathews*, 424 U.S. at 340, 96 S.Ct. at 905, neither is this interest insignificant. There is also some risk that LIGA would be unable to recoup payments erroneously made. The employer and the insurance carriers involved in this case are insolvent, and obtaining reimbursement from the LHWCA Special Fund is uncertain because the Secretary of Labor's use of those funds is discretionary. *See B.S. Costello, Inc. v. Meagher*, 867 F.2d 722, 725 (1st Cir.1989). Review by the district court in section 18(a) enforcement proceedings could reduce the risk of erroneous payment, if the district court were able to review the ALJ's alleged procedural errors before enforcing the supplemental order of default.

On the other hand, the government has a significant interest in maintaining a quick and inexpensive mechanism for getting compensation into the hands of injured workers. This interest is "central to the spirit, intent, and purposes of the LHWCA" and is embodied in section 18(a) of the Act. *Tidelands*, 719 F.2d at 129. Recognizing the possibility of erroneous ALJ decisions, the LHWCA provides a comprehensive system of review, including the opportunity to petition for a stay. There is little risk that the BRB and this Court would uphold an erroneous compensation order against LIGA. In addition, the LHWCA itself represents a compromise between the interests of injured workers, who receive a certain and immediate recovery, and the interests of employers and insurers, who in turn receive "definite and lower limits on potential liability than would have been applicable in common-law tort actions for damages." *Potomac Elec. Power Co. v. Director, Office of Workers' Comp. Programs*, 449 U.S. 268, 281–82, 101 S.Ct. 509, 516–17, 66 L.Ed.2d 446 (1980).

On balance, we find that LIGA's interest in obtaining additional pre-enforcement review of the underlying Compensation Order is insufficient to outweigh the government's interest in maintaining a quick and inexpensive mechanism for placing compensation in the hands of injured workers. In this case, it is undisputed that Abbott is entitled to benefits, and there is little doubt that district court review of the Compensation Order would cause additional delay and expense. Moreover, there is substantial doubt that LIGA will be able to avoid ultimate liability for Abbott's benefits. *See Martin Lumber Partnership v. LIGA*, 534 So.2d 469 (La.Ct.App.1988), *writ denied*, 537 So.2d 1162 (La.1989) (LIGA liable for worker's compensation based on Early American "cut-through" endorsement); *Wilkerson v. Jimco, Inc.*, 499 So.2d 1245 (La.Ct.App.1986) (same). We conclude that the procedures currently available to LIGA under the LHWCA are adequate to satisfy the demands of due process.

■ LIGA's final argument is that it will be denied due process because of the inherent delay in BRB review proceedings. LIGA asserts that it can expect a three-year delay before the BRB renders its decision. We reject this contention.

It is true that at some point a delay in the opportunity for administrative and judicial review can amount to a denial of due

process. *See Loudermill,* 470 U.S. at 547, 105 S.Ct. at 1496. However, the United States Supreme Court has stated that a mere allegation of delay, without an explanation of why the delay is unreasonable, is insufficient to support a claim for denial of due process. *Id.* In this case, LIGA has merely asserted that it can expect a long delay in its appeal to the BRB, without explaining why the delay is unwarranted or unreasonable. Under these circumstances, we cannot conclude that the delay in the LHWCA review process amounts to a denial of due process. *See, e.g., United States v. Batson,* 782 F.2d 1307, 1312 (5th Cir. 1986), *cert. denied,* 477 U.S. 906, 106 S.Ct. 3277, 91 L.Ed.2d 567 (1986) (four-year delay not a denial of due process under the particular circumstances).

### IV.

The judgment of the district court is AFFIRMED.