**William K. SCHMIT, Plaintiff–Appellee,**

**and**

**Office of Workers' Compensation Programs, United States Department of Labor, Intervening–Appellee,**

**v.**

**ITT FEDERAL ELECTRIC INTERNATIONAL; Pacific Employers Insurance Company, Defendants–Appellants.**

No. 92–1211.

United States Court of Appeals, Seventh Circuit.

Argued Nov. 12, 1992.

Decided Feb. 19, 1993.

Rehearing Denied March 22, 1993.

William K. Schmit, pro se.

Gregory P. Sujack (argued), David F. Buysse, Garofalo, Hanson, Schreiber & Vandlik, Chicago, IL, for defendants-appellants.

Eileen M. McCarthy, Dept. of Labor, Appellate Litigation, Donald S. Shire, Sol. Gen., Joshua T. Gillelan, II (argued), Marianne Demetral Smith, Office of the Sol., Louis W. Rogers, Office of Workers' Compensation Program, Washington, DC, for intervening-appellee.

Before FLAUM and EASTERBROOK, Circuit Judges, and WOOD, Jr., Senior Circuit Judge.

HARLINGTON WOOD, Jr., Senior Circuit Judge.

An employer seeking to avoid payment of a compensation award attacks the constitutionality of the Longshore and Harbor Workers' Compensation Act. For the following reasons we affirm the district court's order directing payment of the award.

## I. BACKGROUND

Not often do our cases originate in Greenland, but it was there in 1981 that William Schmit suffered a work-related injury to his neck and arms. At the time, Schmit was employed as a power plant specialist by ITT Federal Electric International ("Federal Electric") at the United States Air Force Base in Thule. Schmit filed a claim for compensation under the Defense Base Act, 42 U.S.C. §§ 1651–1654. The Defense Base Act generally entitles employees at overseas military bases to benefits of the Longshore and Harbor Workers' Compensation Act, 33 U.S.C. §§ 901–950 ("Act").

Pursuant to the Act, an Administrative Law Judge ("ALJ") held a formal hearing in Chicago on October 19, 1989. At the hearing the parties were given an opportunity to present evidence. On May 14, 1990, the ALJ issued his decision and order finding Schmit entitled to compensation under 33 U.S.C. § 908(c)(1). Federal Electric appealed that decision to the Benefits Review Board ("Board"); the company also requested a stay of the payment of the compensation award during the pendency of the Board's review proceedings.

On June 8, 1990, the Board ruled Federal Electric failed to demonstrate irreparable injury would result from paying the award and therefore denied the stay. Despite this, Federal Electric refused to pay the award. Schmit then applied to the Office of Workers' Compensation Programs ("OWCP") district director for a supplementary order. Under 33 U.S.C. § 918(a), if an employer fails to pay a compensation award within thirty days, the employee may apply to the district director for a supplementary order declaring the award in default.

The district director conducted an investigation into Schmit's application and notified Federal Electric and its insurance company of the proceedings. There was no response to the notice and on April 1, 1991, the director entered a supplementary compensation order finding the compensation due Schmit to be in default. The order declared that Federal Electric owed Schmit

a total of $134,079.53; this sum represented $87,836.96 compensation, $28,675.18 interest, and an additional $17,567.39. This additional amount was ordered pursuant to 33 U.S.C. § 914(f), which provides that when an employer fails to pay an award "within ten days after it becomes due," that employer is also liable for an additional amount equal to twenty percent of the compensation award.

Federal Electric refused to comply with the supplementary compensation order. On June 14, 1991, Schmit filed a certified copy of that order in district court. Pursuant to 33 U.S.C. § 918(a), the district court entered a judgment by default on October 10, 1991.

Federal Electric then filed a motion for rehearing, relief from judgment, and for a stay on October 21, 1991. Schmit opposed that motion, and the Director, OWCP, moved to intervene in support of the compensation orders. At a November 14, 1991, hearing, the court allowed the Director's intervention. At a second hearing, on December 19, 1991, the court vacated its "judgment by default" against Federal Electric but entered a new judgment against the company pursuant to 33 U.S.C. § 918(a).

Federal Electric again filed a motion for rehearing, relief from judgment, and for a stay. The company also moved to vacate the writ of execution that had been entered on the court's October 10, 1991, default judgment. At a third hearing on December 26, 1991, the court granted Federal Electric's motion to vacate the writ of execution but denied all other relief. The next day the court filed a memorandum opinion setting forth its reasoning and enforcing the district director's supplementary compensation order. *Schmit v. Federal Elec. Int'l*, 780 F.Supp. 1213 (N.D.Ill.1991).

On January 24, 1992, Federal Electric filed a timely notice of appeal with this court pursuant to 28 U.S.C. § 1291.

## II. DISCUSSION

The question of whether Schmit actually suffered a work-related injury and is entitled to workers' compensation is not before us. Instead, Federal Electric alleges the district court erred in its application of 33 U.S.C. § 918(a), maintains that the statute violates the company's due process rights, and complains that section 918(a) violates Article III of the Constitution.

### A. Applying Section 918(a)

If an injured employee has trouble collecting his workers' compensation award, his recourse is to seek the help of an OWCP district director. Pursuant to 33 U.S.C. § 918(a), the employer has thirty days to pay the award; if the employer refuses, the worker may "make application to the [district director] making the compensation order [f]or a supplementary order declaring the amount of the default." Before issuing the order, the director must conduct an investigation, give notice to the employer, and provide for a hearing. *Id.*

Once the supplementary order is issued, the worker may file a certified copy of the order with the clerk of the appropriate federal district court. After determining the order complies with the Act, but without holding an adversarial hearing, the court then enters judgment for the worker:

> Such supplementary order of the [district director] shall be final, and the court shall upon the filing of the copy enter judgment for the amount declared in default by the supplementary order if such supplementary order is in accordance with law. Review of the judgment so entered may be had as in civil suits for damages at common law.

33 U.S.C. § 918(a). As noted above, the statute provides for review of the district court's decision by this court.

As recounted in the previous section, the district director and the district court followed the steps outlined in the statute. After issuing a default judgment for Plaintiff on October 10, 1991, the district court later vacated that judgment. The court reasoned that default judgment was not warranted since the Defendant had never been served a complaint nor given notice or a summons. In other words, the Defendant "did not fail an obligation of the federal rules" and therefore default judgment

under Federal Rule of Civil Procedure 55 "was improper." *Schmit v. Federal Elec. Int'l,* 780 F.Supp. 1213, 1216 (N.D.Ill.1991).

The court then conducted a hearing with both sides represented and concluded Schmit was entitled to judgment pursuant to 33 U.S.C. § 918(a). The court did so after stating that its review of supplementary orders was limited to determining whether the order was entered "in accordance with the law." *Id.* In other words, the court examined the order to ensure it was issued according to 33 U.S.C. § 918(a). The court based its standard of review on *Abbott v. Louisiana Insurance Guaranty Ass'n,* 889 F.2d 626 (5th Cir.1989), *cert. denied,* 494 U.S. 1082, 110 S.Ct. 1813, 108 L.Ed.2d 944 (1990).

In *Abbott,* the Fifth Circuit said, "[T]he district court's scope of review in section 18(a) enforcement proceedings is limited to the lawfulness of the supplemental orders of default and does not include the procedural or substantive correctness of the underlying compensation orders." *Id.* at 630; *c.f. Severin v. Exxon Corp.,* 910 F.2d 286, 290 (5th Cir.1990) (*Abbott* presupposes final decision and order capable of enforcement). Despite *Abbott*'s unambiguous language, Federal Electric argues the district court misconstrued the case and unnecessarily limited its scope of review. Federal Electric asserts the district court should have reached its arguments concerning the constitutionality of section 918(a).

We disagree with both contentions. First, the district court accurately interpreted *Abbott.* Second, we agree with the Fifth Circuit as to the district court's proper role in reviewing a supplementary order. The Longshore and Harbor Workers' Compensation Act is "a compromise between the competing interests of disabled laborers and their employers." *Potomac Elec. Power Co. v. Director, Office of Workers' Compensation Programs,* 449 U.S. 268, 282, 101 S.Ct. 509, 516, 66 L.Ed.2d 446 (1980). Injured employees give up the ability to recover their full damages in return for "a prompt and certain recovery" of some damages; employers lose common-law defenses but gain "definite and lower limits on potential liability than would have been applicable in common-law tort actions for damages." *Id.* at 281–82, 101 S.Ct. at 516.

To effectuate the employees' interest, Congress enacted 33 U.S.C. § 918(a). This section "was intended to provide a 'quick and inexpensive mechanism for the prompt enforcement of unpaid compensation awards, a theme central to the spirit, intent, and purposes of the LHWCA.' " *Abbott,* 889 F.2d at 629 (quoting *Tidelands Marine Serv. v. Patterson,* 719 F.2d 126, 129 (5th Cir.1983)); *accord Providence Washington Ins. Co. v. Director, Office of Workers' Compensation Programs,* 765 F.2d 1381, 1384–85 (9th Cir.1985); *see also Crowell v. Benson,* 285 U.S. 22, 47, 52 S.Ct. 285, 291, 76 L.Ed. 598 (1932) (purpose of Act "is to secure ... an immediate investigation and a sound practical judgment"). As the Fifth Circuit aptly noted, "Allowing review of underlying compensation orders in proceedings to enforce supplemental orders of default could cause additional delay and expense and frustrate Congress' intent to get compensation into the injured workers' hands as quickly as possible." *Abbott,* 889 F.2d at 629. We agree.

Federal Electric does not contend the district director failed to follow the appropriate procedures under section 918(a) before issuing the supplemental order. That being the case, we reject the company's challenge to the district court's review of the supplementary order issued pursuant to 33 U.S.C. § 918(a).

**B. Due Process**

■ Avoiding expense and delay would not be justification for a statute that violates an employer's constitutional rights. Federal Electric contends 33 U.S.C. § 918(a) does just that by curtailing its right to due process. Before addressing this argument, it is necessary to understand the statutory procedure a worker follows in seeking compensation under the Act.

After suffering a work-related injury, a worker has a limited time in which to file a claim for compensation with a district di-

rector. 33 U.S.C. § 919(a). The director then notifies the worker's employer and other interested parties of the claim. *Id.* § 919(b). An investigation of the claim takes place and upon application of any interested party, the director shall order a hearing. *Id.* § 919(c). If a hearing is ordered, the director must give the parties at least ten days notice. *Id.* The hearing is conducted by an ALJ, who makes findings of fact, conclusions of law, and if appropriate, issues compensation orders. *Id.* § 919(d). The Act provides for internal appellate review by the Benefits Review Board. *Id.* § 921(b)(3). In turn, final orders of the Board are reviewable by the United States Courts of Appeals. *Id.* § 921(c); *see Thompson v. Potashnick Constr. Co.,* 812 F.2d 574, 575–76 (9th Cir. 1987).

Section 918(a) falls between the hearing before the ALJ and appeal of the compensation order to the Board. As the Ninth Circuit noted, "The abbreviated § 918 procedure is limited to situations where the employer's liability already has been determined under a compensation order and the employer is in default of its payment obligations under that order." *Providence Washington Ins. Co. v. Director, Office of Workers' Compensation Programs,* 765 F.2d 1381, 1384 (9th Cir.1985).

█ An employer is thus required to pay the compensation award even though an appeal may be pending which would overturn the award. *See Lazarus v. Chevron USA, Inc.,* 958 F.2d 1297, 1299–1300 (5th Cir.1992). The only way for an employer to avoid payment is to obtain a stay from the Board; to do so, the employer must demonstrate irreparable injury would result from the payment. 33 U.S.C. § 921(b)(3).

Federal Electric contends this scheme does not afford it due process. In *Abbott v. Louisiana Insurance Guaranty Ass'n,* 889 F.2d 626 (5th Cir.1989), *cert. denied,* 494 U.S. 1082, 110 S.Ct. 1813, 108 L.Ed.2d 944 (1990), the court dismissed a similar challenge to section 918(a), concluding that the hearing before the ALJ afforded the employer ample due process:

"The fundamental requirement of due process is the opportunity to be heard 'at a meaningful time and in a meaningful manner.' " *Mathews v. Eldridge,* 424 U.S. 319, 333 [96 S.Ct. 893, 902, 47 L.Ed.2d 18] (1976) (quoting *Armstrong v. Manzo,* 380 U.S. 545, 552 [85 S.Ct. 1187, 1191, 14 L.Ed.2d 62] (1965)). This requirement generally means that a party must have the opportunity for a hearing before the government initially interferes with the party's protected property interest. *See Cleveland Bd. of Educ. v. Loudermill,* 470 U.S. 532, 542 [105 S.Ct. 1487, 1493, 84 L.Ed.2d 494] (1985). The LHWCA provides for a full pre-deprivation hearing before an ALJ in cases where an injured worker's entitlement to benefits or an employer's or insurance carrier's liabilities is disputed.

*Id.* at 631. *See generally* 2 Ronald D. Rotunda & John E. Nowak, *Treatise on Constitutional Law* § 17.8 (1992) (outlining requirements of procedural due process).

Federal Electric was given notice and participated in the hearing before the ALJ on Schmit's claim; Federal Electric had the opportunity to seek a stay of the ALJ's compensation order from the Benefits Review Board; Federal Electric has filed an appeal of the ALJ's compensation order with the Board; and Federal Electric will be entitled to appeal the Board's final decision to this court. We do not find this scheme to be constitutionally deficient. Nor are we persuaded otherwise by Federal Electric's argument that section 921(b)(3), in combination with section 918(a), deprives an employer of property without due process.

Section 921(b)(3) provides that, "The payment of the amounts required by an award shall not be stayed pending final decision in any such proceeding unless ordered by the Board. No stay shall be issued unless irreparable injury would otherwise ensue to the employer or carrier." Federal Electric contends employers are unable to meet this standard unless they show payment would drive them into bankruptcy. *See Rivere v. Offshore Painting Contractors,* 872 F.2d 1187, 1191 (5th Cir.1989) (irreparable injury

demonstrated when award would take away practically all of employer's property).

The irreparable injury standard, argues Federal Electric, "permit[s] supplementary compensation orders ... to result in the deprivation of the property of an employer without the due process protections." Brief of Defendants–Appellants at 19. We fail, however, to see how section 921(b)(3) conspires with section 918(a) to violate an employer's due process rights. As noted earlier, a supplementary order cannot issue until the employer's liability has been determined and the employer is in default of its payment obligations. As the determination of Federal Electric's liability was made with ample due process protections, we find it irrelevant whether the company found it difficult to obtain a stay of payment to meet that liability pending review.

### C. Article III

Our federal government is premised upon a division of power among the legislature, judiciary, and executive branch. "The Framers regarded the checks and balances that they had built into the tripartite Federal Government as a self-executing safeguard against the encroachment or aggrandizement of one branch at the expense of the other." *Buckley v. Valeo,* 424 U.S. 1, 122 [96 S.Ct. 612, 683, 46 L.Ed.2d 659] (1976) (per curiam).

The tripartite system is prescribed by Article I of the Constitution, which delimits the powers of the legislature, Article II, which outlines the executive branch, and Article III, which establishes the judiciary. The Constitution does not, however, explicitly recognize Congress's power to establish adjudicative bodies independent of Article III's protections. The Framers, in other words, likely never considered the possibility of Administrative Law Judges hearing workers' compensation cases.

 The question before us is whether 33 U.S.C. § 918(a), as applied, is violative of Article III. Does it allow an unconstitutional encroachment or aggrandizement of Congress at the expense of the judiciary? Federal Electric argues that section 918(a) does just that by allowing the deprivation of an employer's property without prior review by an Article III judge.

The Constitution, however, does not mandate that every step of every legal proceeding be conducted before an Article III judge. For example, in *Crowell v. Benson,* 285 U.S. 22, 52 S.Ct. 285, 76 L.Ed. 598 (1932), the Court upheld an earlier version of the Longshore and Harbor Workers' Compensation Act against an Article III challenge. More recently, the Court in *Northern Pipeline Construction Co. v. Marathon Pipe Line Co.,* 458 U.S. 50, 102 S.Ct. 2858, 73 L.Ed.2d 598 (1982), said that "when Congress creates a statutory right ... it may also provide that persons seeking to vindicate that right must do so before particularized tribunals created to perform the specialized adjudicative tasks related to that right." *Id.* at 83, 102 S.Ct. at 2878 (plurality opinion).

Despite the above quotation, *Northern Pipeline* does not champion the wholesale transfer of power from Article III to Article I tribunals. As Appellants point out, the *Northern Pipeline* plurality condemned a section of the Bankruptcy Reform Act of 1978 for having "impermissibly removed most, if not all, of 'the essential attributes of the judicial power' from the Art. III district court, and [having] vested those attributes in a non-Art. III adjunct." 458 U.S. at 87, 102 S.Ct. at 2880.

To demonstrate this impermissible transfer of power, the plurality contrasted the bankruptcy court with the administrative scheme approved in *Crowell. See id.* at 85, 102 S.Ct. at 2879. The plurality found that the bankruptcy court's subject matter jurisdiction extended beyond traditional matters of bankruptcy and encompassed "all civil proceedings arising under title 11 or arising in or related to cases under title 11." *Id.* (citation omitted). In other words, the bankruptcy court did not confine itself to "specialized, narrowly confined factual determinations regarding a particularized area of law," *id.,* but adjudicated rights created by state law. In the course of its adjudication, the bankruptcy court was authorized to exercise "all ordinary powers of district courts" including the power to preside over jury trials, to issue declaratory judgments, writs of habeas corpus, and

"any order, process, or judgment appropriate for the enforcement of the provisions of Title 11." *Id.* This meant the bankruptcy court, unlike an administrative agency, did not rely on the district court to enforce its orders. The bankruptcy court's judgments, moreover, were subject only to review under the "clearly erroneous" standard. *Id.*

The administrative adjudicative scheme at issue in this case clearly does not resemble that of the bankruptcy court in *Northern Pipeline.* In contrast to the bankruptcy court, the subject matter jurisdiction of the ALJ and the Benefits Review Board is confined to a right created by Congress; their jurisdiction does not encompass any rights arising from state law, it is limited to "a particularized area of law." *Id.* In addition, neither the OWCP district director nor the Board possess all ordinary powers of the district court; a supplementary order issued pursuant to 33 U.S.C. § 918(a) cannot be enforced except by the district court. Finally, our review of the Board's final orders are not constrained by the "clearly erroneous" standard. Rather, "[t]his court reviews the ALJ's and the Board's determinations on matters of law under a *de novo* standard," *Director, Office of Workers' Compensation Programs v. Midland Coal Co.,* 855 F.2d 509, 511 (7th Cir.1988), and findings of fact are reviewed to make certain they are supported by substantial evidence. *Zettler v. Director, Office of Workers' Compensation Programs,* 886 F.2d 831, 834 (7th Cir.1989). *See generally* 16 Charles A. Wright et al., *Federal Practice & Procedure* §§ 3940–41 (1977) (discussing review of administrative agencies).

Appellants' attempt to analogize section 918(a) to the Bankruptcy Reform Act in *Northern Pipeline* also ignores the more recent majority decisions of the Supreme Court in *Thomas v. Union Carbide Agricultural Products Co.,* 473 U.S. 568, 105 S.Ct. 3325, 87 L.Ed.2d 409 (1985), and *Commodity Futures Trading Commission v. Schor,* 478 U.S. 833, 106 S.Ct. 3245, 92 L.Ed.2d 675 (1986).

In *Thomas,* a majority of the Court restated the holding of *Northern Pipeline* this way:

The Court's holding in that case establishes only that Congress may not vest in a non-Article III court the power to adjudicate, render final judgment, and issue binding orders in a traditional contract action arising under state law, without consent of the litigants, and subject only to ordinary appellate review.

473 U.S. at 584, 105 S.Ct. at 3334. The *Northern Pipeline* holding, as interpreted by *Thomas,* clearly does not undermine the validity of 33 U.S.C. section 918(a)—as state law is not involved—nor does *Thomas* itself.

In *Thomas,* the Court upheld a binding administrative arbitration scheme, with only limited Article III judicial review, for resolving disputes among manufacturers seeking to register new pesticides. Several pesticide companies challenged the statute authorizing the binding arbitration, alleging the procedure violated Article III. The Court rejected this argument, stating that "[m]any matters that involve the application of legal standards to facts and affect private interests are routinely decided by agency action with limited or no review by Article III courts." 473 U.S. at 583, 105 S.Ct. at 3334.

Similarly, in *Schor* the Court rejected an Article III challenge to an administrative tribunal that was empowered to adjudicate violations of federal commodity trading laws and related common-law counterclaims. In its analysis, the Court examined many of the factors highlighted by the plurality in *Northern Pipeline,* namely the administrative tribunal's subject matter jurisdiction, its ability to enforce its own orders, the Article III standard of review regarding its decisions, and the attributes of power it shared with district courts. *See* 478 U.S. at 852–53, 106 S.Ct. at 3258.

Appellants, additionally, fail to recognize circuit court decisions upholding similar administrative schemes in the face of Article III challenges. *See, e.g., Geldermann, Inc. v. Commodity Futures Trading Comm'n,* 836 F.2d 310 (7th Cir.1987) (upholding mandatory arbitration procedure under Commodity Exchange Act), *cert. denied,* 488 U.S. 816, 109 S.Ct. 54, 102

L.Ed.2d 33 (1988); *Gibas v. Saginaw Mining Co.*, 748 F.2d 1112, 1119 (6th Cir.1984) (Congress may empower Benefits Review Board to adjudicate black lung benefits cases), *cert. denied*, 471 U.S. 1116, 105 S.Ct. 2357, 86 L.Ed.2d 258 (1985); *Kalaris v. Donovan*, 697 F.2d 376, 387–88 (D.C.Cir.) (Benefits Review Board is not Article III court but may execute "some functions historically performed by judges"), *cert. denied*, 462 U.S. 1119, 103 S.Ct. 3088, 77 L.Ed.2d 1349 (1983).

As the Supreme Court stated in *Thomas*, "An absolute construction of Article III is not possible in this area of 'frequently arcane distinctions and confusing precedents.'" 473 U.S. at 583, 105 S.Ct. at 3334 (citation omitted). We shall not attempt the impossible; instead we simply say that in light of Supreme Court precedent, as discussed above, we do not find section 918(a) as applied to be violative of Article III.

## III. CONCLUSION

For the foregoing reasons, the judgment of the district court is affirmed.

AFFIRMED.